Leon B. McLAIN, Appellant,

v.

Richard S. SCHWEIKER, Secretary, Department of Health and Human Services, Appellee.

No. 82–1510.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 14, 1983.

Decided Sept. 1, 1983.

Peter M.D. Martin, Baltimore, Md. (Dennis W. Carroll, Judith F. Fournelle, Administrative Law Center, Legal Aid Bureau, Inc., Baltimore, Md., on brief), for appellant.

Nathan K. Kobin, Dept. of Health and Human Services, Baltimore, Md. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.

K.K. HALL, Circuit Judge:

Leon B. McLain appeals from an order of the district court, affirming the Secretary's denial of his claim for disability insurance and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 416(i); 423(d); 1382 *et seq.* This denial was based on the determination by the Secretary's Administrative Law Judge (ALJ) that McLain, while suffering from a nervous disorder and arthritis, was able to perform his previous work activities in a non-stressful environment. The district court found that there was substantial evidence to support the ALJ's decision.

We agree with the district court that there is substantial evidence to support the finding that McLain was not disabled solely because of his arthritis. But, contrary to the conclusion of the district court, we find

that McLain established a prima facie case that his nervous condition disabled him from performing his previous customary work. We also find that the Secretary failed to prove that McLain could engage in alternative work in the national economy. Accordingly, we vacate the judgment of the district court and direct that the case be remanded to the Secretary for further proceedings consistent with this opinion.

## I.

Claimant was 49 years old at the time of the Secretary's decision and has completed high school, as well as two years of studies at the university level. He was employed as a traveling sales representative for a cheesecake company from 1968 to 1973 and also worked as a security guard for Wells Fargo for seven months in 1977.

At the administrative hearing, McLain testified to the existence of a long-standing nervous disorder and arthritis in his right ankle. According to McLain, he left his job as a salesman with the cheesecake firm because of stress. He stated that he cannot tolerate noise, including telephones, televisions, typewriters, and people singing. McLain further testified that he is afraid of crowds, or even groups of four to five people, and believes that others want to create problems for him. He stated that his private physician was treating his nervous disorder with medication (Azene). In response to questioning by the ALJ, McLain said he would be willing to try sedentary work as a telephone order taker or dispatcher.

According to the uncontradicted medical evidence presented to the ALJ, McLain has a 20-year history of an acute nervous disorder, including institutionalization for psychiatric problems. An internist, Dr. George Angov, who examined McLain in January, 1979, at the request of the Social Security Administration, made reference to McLain's irritation with noise and people and concluded that his "[i]nadequate personality will be a major disabling factor."

McLain was referred by the Social Security Administration to Dr. Katherine V. Kemp, a psychiatrist, in May, 1979. Following this consultative examination, Dr.

Kemp reported that McLain had a paranoid-like trend to his thinking and was "a somewhat marginal individual with multiple somatic complaints whose present state of reality testing approaches the psychotic." It was Dr. Kemp's opinion that McLain's preoccupation with his multiple physical complaints was probably the only thing preventing a complete psychotic depressive break. She concluded that McLain could not interrelate with others and would be unable to withstand the pressures of the employment world without strong, supportive psychological treatment.

In the fall of 1979, McLain was seen by another psychiatrist, Dr. U.L. Mallya, who confirmed that interpersonal relationships with others were difficult for McLain. Dr. Mallya's diagnosis was neurotic depression with anxiety. He alluded to at least one unsuccessful attempt to alleviate McLain's condition with antidepressant medication.

The ALJ found that McLain's primary impairment was his nervous disorder, but concluded that McLain was able to perform his previous salesman and security guard work activities in nonstressful environments. The ALJ further noted the existence of sales positions in the area, such as telephone order takers and sedentary security guard positions, which would not involve stress or crowds. Accordingly, the ALJ concluded that McLain could perform his previous work and was, therefore, not disabled. The district court subsequently found that this determination was supported by substantial evidence. From that decision, McLain appeals.

## II.

On appeal, McLain contends that he presented a prima facie case of disability by showing that he was unable to perform his previous work. McLain further contends that the Secretary failed to show by particularized proof that McLain could perform an alternative job existing in significant numbers in the national economy. We agree with McLain with respect to both of these contentions.

■ The well-established procedure for arriving at a determination of disability

under the Social Security Act places the initial burden of proof on the claimant to show that, because of his impairment, he is unable to perform his previous work. Once this prima facie showing of disability has been made by the claimant, then the burden of going forward shifts to the Secretary. To overcome a prima facie case of disability, the Secretary must establish that the claimant has sufficient residual functional capacity to engage in an alternative job existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir.1981); *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir.1980); *Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir.1975).

In this case we first must determine whether McLain has met his initial burden of establishing a prima facie case of disability. In addition to his own testimony confirming a history of nervous problems, the record reveals that McLain was being treated with medication for a nervous disorder by his personal physician. He was also examined by three other doctors, including two psychiatrists, who all agreed McLain had a psychiatric problem. One psychiatrist, Dr. Kemp, stated that he was borderline psychotic.

█ Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted by the ALJ. *See Oppenheim v. Finch,* 495 F.2d 396 (4th Cir.1974); *Vitek v. Finch,* 438 F.2d 1157, 1159–60 (4th Cir.1971); *Underwood v. Ribicoff,* 298 F.2d 850 (4th Cir.1962). In the present case the medical findings and opinions unanimously support the conclusion that McLain has a serious psychiatric disorder. It is clear that McLain's impairment prevents him from performing the demands of his previous jobs as a salesman and security guard. Both of those jobs by their very nature involved stress and required interaction with others, which, as the evidence overwhelmingly shows, McLain is unable to tolerate. A return to either of those particular jobs is unquestionably foreclosed.

█ In order to establish a prima facie case of disability, all that a claimant must ordinarily show is his inability to perform his past specific relevant jobs. We conclude that under the circumstances present in this case McLain has met this initial burden of proof. *Cf. Wyatt v. Weinberger,* 519 F.2d 1285, 1286–87 (4th Cir.1975) (claimant established a prima facie case of disability from nervousness, which prevented her from returning to her former job as a spinner in a textile mill); *Taylor v. Weinberger, supra,* at 666 (claimant presented a prima facie case of disability by showing she could not return to her former occupation as a clothes presser in a laundry).

Because McLain established his prima facie case, the burden then shifted to the Secretary to come forward with proof of McLain's capacity to perform alternate work. In this case the Secretary came forward with no evidence showing that, considering McLain's age, education, work experience and impairment, there are jobs which he could perform. The reliance by the Secretary and the district court on McLain's testimony that he would be willing and possibly able to try certain jobs is misplaced. This in no way satisfies the requirement of producing evidence of McLain's skills and abilities and says nothing of the availability of work to match those abilities. The ALJ's administrative notice of sales positions and sedentary security guard positions, which would not involve stress or crowds, is totally insufficient in this case to establish, as the Secretary must, McLain's specific vocational ability.

█ Previous decisions of this Court have held that the testimony of a vocational expert is ordinarily required in order for the Secretary to meet his burden. *Smith v. Califano,* 592 F.2d 1235, 1236 (4th Cir.1979); *Hall v. Harris, supra,* at 264; *Taylor v. Weinberger, supra,* at 666. We find that the presence of a vocational expert continues to be particularly appropriate in a case such as this, which involves a nonexertional disability. *See Wilson v. Califano, supra* at 1053–1054.[1] We, therefore, conclude that

---

1. We recognize that the Supreme Court has recently approved the use of the Secretary's

the case must be remanded to allow the Secretary to adduce appropriate proof to counter the claimant's prima facie case. Of course, the claimant may also submit additional evidence to rebut the Secretary's evidence or to supplement his own.

### III.

For the foregoing reasons, the judgment of the district court is vacated and remanded, with instructions to remand to the Secretary for proceedings consistent with this opinion.

VACATED AND REMANDED.

MURNAGHAN, Circuit Judge, concurring:

In the conclusion that the matter must be remanded for further consideration by the Secretary of the issue whether there are other jobs in the national economy which McLain could perform, I concur. However, with the prejudgments that, to prevail, the Secretary must adduce (a) "particularized proof" of a capacity to perform other jobs in the national economy and (b) testimony of an independent vocational expert because administrative notice is "totally insufficient" I take exception.

At this early stage, before the case has undergone administrative reconsideration, with the possibility of additional evidence not presently before us, I regard it as inappropriate to foreclose altogether any possibility of use of the Medical-Vocational Guidelines (the grid system for taking administrative notice of available jobs in the national economy). That, I submit, runs counter to the decision in *Heckler v. Campbell*, —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Nor can we foretell, with certainty, the need for the testimony of a vocational expert.

medical-vocational guidelines in lieu of a vocational expert's testimony in appropriate cases. *Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). These guidelines, however, "are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs," and "may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e). As the Supreme Court in *Campbell* points out, "[i]f an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered.... Thus, the regulations provide that the rules will be applied only when they describe a claimant's abilities and limitations accurately." *Campbell, supra* at ——, n. 5, 103 S.Ct. at 1955, n. 5. *See also, id.* at ——, n. 11, 103 S.Ct. at 1958, n. 11. Because McLain has demonstrated the existence of a nonexertional impairment, resort to the medical-vocational guidelines would be inappropriate and the presence of a vocational expert will be required for the Secretary to establish McLain's alternate vocational capacity. *See Grant v. Schweiker,* 699 F.2d 189, 192 (4th Cir.1983).