**Tonya G. WHITE, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

Case No. 2:08–cv–00976.

United States District Court, S.D. West Virginia, Charleston.

July 23, 2009.

John H. Shumate, Jr., John Shumate Law Firm, Mt. Hope, WV, for Plaintiff.

Michael McGaughran, Social Security Administration Office of General Counsel, Philadelphia, PA, Stephen M. Horn, U.S. Attorney's Office, Charleston, WV, for Defendant.

### *MEMORANDUM OPINION*

MARY E. STANLEY, United States Magistrate Judge.

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383f. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Tonya White (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on November 15, 2006, alleging disability as of June 1, 2006, due to back trouble, depression and anxiety. (Tr. at 98–100, 101–03, 149.) The claims were denied initially and upon reconsideration. (Tr. at 53–57, 58–62, 64–66, 67–69.) On August 13, 2007, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 73.) The hearing was held on March 27, 2008, before the Honorable James P. Toschi. (Tr. at 18–47.) By decision dated April 14, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9–17.) The ALJ's decision became the final decision of the Commissioner on July 25, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 1–3.) On August 6, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c (a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir.1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir.1981). The burden then shifts to the Commissioner, *McLain v. Schweiker,* 715 F.2d 866, 868–69 (4th Cir.1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education,

work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir.1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 9.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity and chronic back pain syndrome. (Tr. at 11.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 13.) As a result, Claimant can return to her past relevant work as a cashier. (Tr. at 16.) On this basis, benefits were denied. (Tr. at 17.)

*Scope of Review*

■■■■ The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir.1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d

1453, 1456 (4th Cir.1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir.1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

*Claimant's Background*

Claimant was twenty-eight years old at the time of the administrative hearing. (Tr. at 22.) Claimant completed the eighth grade. (Tr. at 22.) In the past, she worked as a stocker, as a salesperson and as a cashier for Wal–Mart, as a cook in a restaurant and as a cashier and stocker for a convenience store. (Tr. at 25.)

*The Medical Record*

The court has reviewed all evidence of record, including the medical evidence of record. Claimant has chronic back pain syndrome and obesity, both of which impairments the ALJ found to be severe. The court will not summarize this evidence because Claimant's appeal primarily relates to the ALJ's treatment of her mental impairments and his finding that Claimant did not suffer a severe mental impairment.

On September 21, 2006, Claimant had given birth three months earlier and reported feeling nervous. (Tr. at 220.)

On December 11, 2006, Sunny S. Bell, M.A. examined Claimant at the request of the State disability determination service. Claimant reported depression and "bad nerves." (Tr. at 233.) Claimant was cooperative and motivated. Her speech was clear, goal-directed and relevant. Judgment was markedly deficient. Claimant denied suicidal or homicidal ideation. Immediate memory was within normal limits. Recent memory was severely deficient. Remote memory was within normal limits.

Concentration was mildly deficient. Claimant exhibited no gross psychomotor difficulties.

(Tr. at 234.) Ms. Bell diagnosed depressive disorder, not otherwise specified and panic disorder without agoraphobia on Axis I and deferred an Axis II diagnosis. Ms. Bell's diagnostic rationale was that Claimant

> presented with a depressed mood and blunted affect. Social skills were hesitant. She did not exhibit a sense of humor. Eye contact was hesitant, and her interactions were those of an introverted individual. She complains of depression, crying episodes, decreased energy, sleep difficulties, irritability, decreased libido, hopeless, helpless, worthless, and useless feelings, difficulty with concentration, and of being withdrawn and apathetic.
>
> Panic disorder without agoraphobia is listed based upon the following. Ms. White complains of panic attacks in which her heart races, she trembles and shakes, and has difficulty breathing. Her panic attacks can occur anywhere.

(Tr. at 235.)

Ms. Bell noted that Claimant takes care of her personal hygiene and grooming daily and cares for her child. She takes care of housework, cooking, dishes, laundry and shopping. Claimant goes to the post office and occasionally watches television. Claimant's social functioning was mildly deficient based on the clinical interview and mental status examination. Claimant denied visiting friends, but reported that she does visit with family. Claimant was in a relationship with her boyfriend, but reported she is nervous when she is around a large group. Persistence and pace were within normal limits. Ms. Bell opined that Claimant's prognosis was poor. (Tr. at 235.)

On March 10, 2007, Jeff Harlow, Ph.D., a State agency medical source, completed a Psychiatric Review Technique form on which he opined that Claimant's mental impairments were not severe. (Tr. at 238–250.) Dr. Harlow wrote that "[t]his claimant's statements about functional capacities are partially credible because they are externally inconsistent with clinical results of the consultative evaluation. Since all key functional capacities at the consultative evaluation are indicated to be within normal limits or mildly deficient, it is concluded that mental impairments are not severe." (Tr. at 250.)

On June 12, 2007, Rosemary L. Smith, Psy.D., a State agency medical source, completed a Psychiatric Review Technique form on which she opined that Claimant's mental impairments were not severe. (Tr. at 261–74.) Dr. Smith wrote that "Claimant is not credible re: her allegations of limitations. Her current . . . [activities of daily living] are consistent with those on initial. She alleged problems with memory, concentration, understanding and following instructions yet her [activities of daily living] and the [medical evidence of record] in file do not support significant functional limitations due to a mental impairment." (Tr. at 273.)

In June of 2007, Claimant complained to a physician's assistant about increased depression with crying spells, mood swings, irritability and social withdrawal. (Tr. at 298.) Jamie Settle, PA–C's impression was depression. Claimant was prescribed Cymbalta.

On June 28, 2007, M.K. Hasan, M.D. examined Claimant upon referral from Mr. Settle. Claimant reported difficulty sleeping, chronic pain and depression. Claimant had a thirteen month old and a two month old child. Claimant's affect was of some dysphoria. She was depressed and despondent with a sense of helplessness and hopelessness prevailing. Claimant was oriented to time, place, date and per-

son. Abstract thinking was poor. Claimant was able to remember her name and address after two to five minutes. Claimant was able to do serial sevens. Claimant appeared to be of limited intelligence due to social and cultural deprivation. Insight, judgment and problem solving were rather poor. Dr. Hasan diagnosed major depression, recurrent, moderate to moderately severe and generalized anxiety disorder on Axis I. He made no Axis II diagnosis. He rated Claimant's GAF at 45 to 50. He increased Claimant's Cymbalta and prescribed Valium, Topamax and Klonopin. (Tr. at 297.)

On July 12, 2007, Claimant reported to Dr. Hasan that she was having a hard time coping and that the Valium was not helping. Claimant was showing features of fear and panic. Dr. Hasan's diagnosed major depression, recurrent, moderate to moderately severe in nature with Cyclothymia and rule out bipolar disorder on Axis I. (Tr. at 296.) Claimant was to discontinue the Valium and begin taking Klonopin, along with Cymbalta and Topamax. Claimant was to continue with a biopsychosocial approach and be referred for counseling as needed. (Tr. at 296.) On August 9, 2007, Claimant reported to Dr. Hasan that with the exception of back pain, she was doing fairly well. Dr. Hasan's diagnosis was major depression, recurrent, moderate to moderately severe and chronic pain syndrome, low back on Axis I. There was no Axis II diagnosis. Claimant's medications remained the same. (Tr. at 292.)

On September 6, 2007, Claimant reported that the Klonopin was helping, but her depression was getting worse due to her medical problems. Claimant's mood was stable, and her affect was restricted. Psychomotor activity was normal. Insight and judgment were fair. Attention and concentration were good. Dr. Hasan's diagnosis remained the same. He instructed Claimant to stop taking the Cymbalta and add Effexor. (Tr. at 291.)

Dr. Hasan completed a Medical Assessment of Ability to do Work–Related Activities (Mental) on September 6, 2007, and opined that Claimant had fair to poor abilities in all areas. (Tr. at 283–85.)

On September 20, 2007, Claimant reported continued back pain and problems with depression and anxiety. Dr. Hasan diagnosed major depression, recurrent, moderate to moderately severe and generalized anxiety disorder on Axis I and made no Axis II diagnosis. He prescribed Topamax, Klonopin, Effexor and Lyrica. (Tr. at 290.)

On October 18, 2007, Dr. Hasan observed that Claimant was having a "hard time." (Tr. at 288.) Claimant had had an MRI recently, which showed degeneration of the discs in her back. Claimant reported sleeping and eating well. Claimant was crying, and she had a depressed and anxious mood with some dysphoria. Claimant had a sense of hopelessness and helplessness, but no suicidal or homicidal ideations. Claimant's mood was stable, and her affect was euthymic. Insight and judgment were fair. Dr. Hasan diagnosed major depression, recurrent, moderate to moderately severe in nature and history of panic disorder on Axis I. He made no Axis II diagnosis. He increased Claimant's Effexor, and prescribed Topamax, Neurontin and Klonopin. (Tr. at 288.)

On November 1, 2007, Claimant reported to Dr. Hasan that she continued to have a hard time coping. Dr. Hasan's diagnoses included major depression and generalized anxiety disorder. (Tr. at 287.) On December 27, 2007, Claimant reported doing well on her current medication. Dr. Hasan's diagnosis was major depression, recurrent, moderate to severe. Claimant's medications remained the same. (Tr. at 286.)

At the administrative hearing, when limitations opined by Dr. Hasan on the Assessment were included in a hypothetical question, the vocational expert could identify no jobs. (Tr. at 43–45.) When limitations opined by Ms. Bell were included, the vocational expert suggested that they could have an impact on Claimant's ability to work on a sustained basis, though this line of questioning did not proceed further because the ALJ then turned to limitations opined by Dr. Hasan. (Tr. at 44.)

*Claimant's Challenges to the Commissioner's Decision*

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred when he disregarded the opinion of Dr. Hasan, Claimant's treating psychiatrist, and the opinion of Ms. Bell, who conducted a consultative mental examination at the request of the State disability determination service. (Pl.'s Br. at 9–14.)

The Commissioner argues that substantial evidence supports the ALJ's decision that Claimant could perform unskilled light work, including her past work as a cashier. In addition, the ALJ did not err in weighing the medical evidence of record related to Claimant's mental impairments or in concluding that Claimant's mental impairments were not severe. (Def.'s Br. at 7–12.)

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a (2008). First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1). Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s).

§§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3). The ALJ incorporates the findings derived from the analysis in the ALJ's decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2).

Regarding the weighing of medical opinions, every medical opinion received by the

ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

In his decision, the ALJ found that Claimant's mental impairments were not severe. The ALJ determined that Claimant had medically determinable depression, but that it did not cause more than a minimal limitation in Claimant's ability to perform basic work activities. In evaluating the four broad areas of functioning, the ALJ concluded that Claimant had mild limitation in activities of daily living, social functioning and concentration, persistence and pace and no episodes of decompensation. (Tr. at 12–13.)

Regarding the weight afforded the medical evidence of record related to Claimant's mental condition, the ALJ stated that Ms. Bell's diagnoses "appear to be based on the claimant's subjective complaints. In addition, the claimant's severely deficient memory is inconsistent with her extensive activities of daily living. Furthermore, it is noted that all key functional capacities were found to be within normal limits at this evaluation (Exhibit 3F)." (Tr. at 12.) The ALJ determined that the opinions of Dr. Harlow and Dr. Smith were entitled to significant weight because they were well supported by the evidence of record. (Tr. at 15.)

Regarding Dr. Hasan, the ALJ stated that he gave no significant weight to the opinion of Dr. Hasan on the Assessment he completed because it was not supported by the evidence of record. The ALJ stated that "[a] progress note from Dr. Hasan dated December 27, 2007, revealed that the claimant was doing well with her medication. She has been eating and sleeping well. She denied any suicidal ideations, hallucinations, or delusions. Her affect and mood were appropriate. Her thoughts were logical with no psychosis (Exhibit 10F/1)." (Tr. at 16.)

■ The court finds that the ALJ's determination that Claimant does not suffer a severe mental impairments is not supported by substantial evidence. The ALJ relied on the opinions of the two State agency medical sources, Drs. Harlow and Smith, neither of whom had the benefit of treatment notes and other evidence from

Dr. Hasan, Claimant's treating physician. The evidence from Dr. Hasan was developed and added to the record after these sources rendered their opinions, and is not mentioned in either form completed by Dr. Harlow or Dr. Smith. Essentially, the ALJ rejected the opinions of Dr. Hasan, a treating physician, and Ms. Bell, an examining source, for the opinions of two nonexamining sources who did not have the benefit of the evidence of record from Dr. Hasan, a treating source. Such findings are not supported by substantial evidence and do not comply with the 20 C.F.R. §§ 404.1527(d) and 416.927(d).

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, this matter is REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.